IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-550-D

TRACIE TALLEY, f/k/a TRACIE JONES, )
et al., )
 )
Plaintiffs, )
 )
v. )                               **ORDER**
 )
LINCOLN PROPERTY COMPANY, )
et al., )
 )
Defendants. )

On February 7, 2019, Tracie Talley, f/k/a Tracie Jones ("Talley"), Demorris Walters

("Walters"), Shante Pruitt ("Pruitt"), Megan Luckey ("Luckey"), and Latoya Glover ("Glover";

collectively, "plaintiffs"), on behalf of themselves and others similarly situated, filed a second

amended complaint against Lincoln Property Company ("Lincoln"), Lincoln Property Company

Manager, Inc. ("LPCM"), Greystone WW Company, LLC, d/b/a Greystone at Widewaters

("Greystone"), Sterling Forest Associates, LLC, d/b/a Vert @ Six Forks ("Vert"), and Inman Park

Investment Group, Inc., d/b/a Inman Park Apartments ("Inman Park"; collectively, "defendants").

Plaintiffs allege that defendants violated North Carolina's Residential Rental Agreements Act

("RRAA"), N.C. Gen. Stat. § 42-38 et seq., the North Carolina Debt Collection Act ("NCDCA"),

N.C. Gen. Stat. § 75-50 et seq., and the North Carolina Unfair and Deceptive Trade Practices Act

("UDTPA"), N.C. Gen. Stat. § 75-1 et seq. [D.E. 42].

On March 14, 2019, all defendants but Greystone moved to dismiss plaintiffs' second

amended complaint [D.E. 47, 52, 54] and filed memoranda in support [D.E. 51, 53, 55]. See Fed.

R. Civ. P. 12(b)(2), (6). On May 13, 2019, plaintiffs responded in opposition [D.E. 62, 63, 64]. On

June 17 and 18, 2019, defendants replied [D.E. 73, 74, 75]. On March 14, 2019, Greystone moved to sever [D.E. 49] and filed a memorandum in support [D.E. 50]. On May 13, 2019, plaintiffs responded in opposition [D.E. 61]. On June 11, 2019, Greystone replied [D.E. 72]. On May 16, 2019, Greystone moved for judgment on the pleadings [D.E. 65] and filed memoranda in support [D.E. 66, 76]. On July 8, 2019, plaintiffs responded in opposition [D.E. 77]. As explained below, the court grants Inman Park and Vert's motions to dismiss [D.E. 47, 52], denies Lincoln and LPCM's motions to dismiss for lack of personal jurisdiction [D.E. 54], grants Greystone's motion for judgment on the pleadings [D.E. 65], and denies as moot Greystone's motion to sever [D.E. 49].

I.

Plaintiffs are former tenants. See 2d Am. Compl. [D.E. 42] ¶¶ 7–13. Talley leased an apartment from Greystone from April 29, 2014, until April 30, 2018. See id. ¶ 108. Walters leased an apartment from Greystone from 2013 until August 31, 2018. See id. ¶ 130. Pruitt leased an apartment from Inman Park from November 1, 2017, until October 31, 2018. See id. ¶ 152. Luckey leased an apartment from Vert from December 18, 2017, until September 17, 2018. See id. ¶ 174. Glover leased an apartment from Greystone from September 1, 2016, until November 30, 2016. See id. ¶ 196–97. Plaintiffs allege that Greystone, Inman Park, and Vert contract with Lincoln and LPCM to manage their apartment complexes. See id. ¶¶ 25, 30, 35. Plaintiffs also allege that Greystone, Inman Park, and Vert are vicariously liable for Lincoln and LPCM's actions and that Lincoln and LPCM defendants enforced the same policies at all three apartment complexes against plaintiffs and members of plaintiffs' purported class. See id. ¶¶ 44–48.

Plaintiffs' rent was due on the first day of each month "with no grace period." E.g., Pl.'s Ex. 1 [D.E. 42-1] 2 ¶ 6; Pl.'s Ex. 5 [D.E. 42-5] 2 ¶ 6; Pl.'s Ex. 6 [D.E. 42-6] 2 ¶ 6; Pl.'s Ex. 26 [D.E. 42-26] 2 ¶ 6. If plaintiffs did not pay rent on time, plaintiffs' leases authorized defendants to file for

2

summary ejectment in state court. See, e.g., Pl.'s Ex. 1 [D.E. 42-1] 5 ¶ 31; Pl.'s Ex. 5 [D.E. 42-5] 5 ¶ 31; Pl.'s Ex. 6 [D.E. 42-6] 5 ¶ 31; Pl.'s Ex. 26 [D.E. 42-26] 5 ¶ 31. If defendants pursued summary ejectment, plaintiffs agreed to pay any "attorneys' fees and all litigation costs to the extent permitted by law." E.g., Pl.'s Ex. 1 [D.E. 42-1] 5 ¶ 31; Pl.'s Ex. 5 [D.E. 42-5] 5 ¶ 31; Pl.'s Ex. 6 [D.E. 42-6] 5 ¶ 31; Pl.'s Ex. 26 [D.E. 42-26] 5 ¶ 31. In addition, plaintiffs' leases authorized defendants to charge one of three fees depending on how far legal action against a defaulting tenant progressed: a complaint-filing fee, a court-appearance fee, or a second trial fee. See, e.g., Pl.'s Ex. 1 [D.E. 42-1] 5 ¶ 31; Pl.'s Ex. 5 [D.E. 42-5] 5 ¶ 31; Pl.'s Ex. 6 [D.E. 42-6] 5 ¶ 31; Pl.'s Ex. 26 [D.E. 42-26] 5 ¶ 31; cf. N.C. Gen. Stat. § 42-46(e)–(g).

Plaintiffs repeatedly did not pay rent on time and thus were in default. See 2d Am. Compl. ¶¶ 111, 133, 155, 177, 199. Because plaintiffs defaulted on their leases, Lincoln and LPCM sent plaintiffs letters ("the Initial Collection Letters") notifying plaintiffs that they would owe "additional legal charges" upon initiation of summary ejectment proceedings. Id. ¶ 68; see id. ¶¶ 111, 133, 155, 177, 199; see, e.g., Pl.'s Ex. 7 [D.E. 42-7]; Pl.'s Ex. 10 [D.E. 42-10]. Defendants began summary ejectment proceedings if plaintiffs did not pay rent by approximately the 10th day of each month. See, e.g., id. ¶¶ 115, 137. Thus, plaintiffs allege that the Initial Collection Letters threatened to assess "eviction fees" against plaintiffs if they did not cure their default before summary ejectment proceedings began. See id. ¶ 71.

These "eviction fees" comprised the litigation costs that defendants incurred for initiating a summary ejectment action: $96.00 for filing a summary ejectment complaint and $30 for a sheriff to effect service of process. See id. ¶¶ 119–20, 141–42, 163–64, 185–86, 207–08.[1] The "eviction

_____

[1] Although plaintiffs allege that these litigation costs were "eviction fees," whether these "eviction fees" constituted a "fee" under the RRAA is a legal conclusion. Thus, the court need not

3

fees" were distinct from the complaint-filing fee, court-appearance fee, or second trial fee that defendants could charge under the lease. See, e.g., id. ¶¶ 110, 132. After posting "eviction fees" to a tenant's account, defendants notified tenants that they owed "eviction fees" ("the Subsequent Collection Letter"). Id. ¶ 94; see, e.g., Pl.'s Ex. 11 [D.E. 42-11]; Pl.'s Ex. 18 [D.E. 42-18]; Pl.'s Ex. 19 [D.E. 42-19]; Pl.'s Ex. 20 [D.E. 42-20]; Pl.'s Ex. 22 [D.E. 42-22]. Once defendants assessed "eviction fees," plaintiffs allege that defendants would not remove them from an account even if defendants did not pursue or dismissed summary ejectment proceedings. See id. ¶ 93. Plaintiffs allege that Greystone, Inman Park, and Vert all approved the Subsequent Collection Letters that Lincoln and LPCM sent to plaintiffs and similarly-situated tenants. See id. ¶ 96.

Plaintiffs all paid the "eviction fees" and defendants voluntarily dismissed their summary ejectment complaints. See id. ¶¶ 126–27, 148–49, 170–71, 192–93, 214–15. Plaintiffs claim that, at that time, no attorney had been hired, no attorney had appeared in court, no hearing had been held, and no summary ejectment complaint had been filed. See, e.g., id. ¶¶ 120–24, 142–46. Defendants also only sought possession of plaintiffs' apartments, not money damages. See, e.g., id. ¶¶ 125, 147. Thus, when plaintiffs paid the "eviction fees," plaintiffs allege that no court had awarded the "eviction fees" to defendants. See, e.g., id. ¶¶ 128, 150. Plaintiffs also allege that they did not agree to a settlement with defendants. See, e.g., id. ¶¶ 129, 151.

## II.

Lincoln and LPCM, both nonresident business entities, challenge personal jurisdiction. The court does not have personal jurisdiction over a nonresident defendant unless personal jurisdiction comports with North Carolina's long-arm statute and the Fourteenth Amendment's Due Process

take as true that these amounts constituted "fees" under the RRAA. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554– 63 (2007).

4

Clause. See, e.g., Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004). North Carolina's long-arm statute extends personal jurisdiction over nonresident defendants to the extent permitted by the Fourteenth Amendment's Due Process Clause. See Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the statutory and constitutional inquiries merge. See id.

Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (alteration and quotation omitted). The extent of the contacts needed for jurisdiction turns on whether the claims asserted against a defendant relate to or arise out of the defendant's contacts with the forum state. See ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). If the defendant's contacts with the state are the basis for the suit, specific jurisdiction may exist. Id. In determining specific jurisdiction, the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Id. (alteration and quotations omitted). Thus, the "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quotation omitted). Plaintiffs do not argue that Lincoln and LPCM are subject to general personal jurisdiction. See [D.E. 63] 5.

When the court rules on a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. See Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). A plaintiff

5

need not establish personal jurisdiction by a preponderance of the evidence at this stage. See Sneha Media, 911 F.3d at 196–97. In addition, the court construes all relevant jurisdictional allegations in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. Mylan Labs., Inc., 2 F.3d at 60. The court has not held an evidentiary hearing. Thus, plaintiffs need only make a prima facie showing of personal jurisdiction over Lincoln and LPCM to survive the motion to dismiss.

Lincoln and LPCM have produced evidence that they do not own properties in North Carolina, maintain offices or agents in North Carolina, conduct any business in North Carolina, or manage any properties in North Carolina. See Austin Decl. [D.E. 55-1] ¶¶ 5(a)–(g). Thus, the court need not take plaintiffs' allegations to the contrary as true. See Wolf v. Richmond Cty. Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984); Clark v. Remark, 993 F.2d 228, 1993 WL 134616, at *2 (4th Cir. 1993) (per curiam) (unpublished table decision); Bassett v. Strickland's Auto & Truck Repairs, Inc., No. 1:17CV590, 2018 WL 3542868, at *3 (M.D.N.C. July 23, 2018) (unpublished); Venderbush v. Veritas Techs. LLC, No. 3:18-cv-272-FDW-DSC, 2018 WL 3428154, at *1 n.1 (W.D.N.C. July 16, 2018) (unpublished).

In response, plaintiffs cite evidence that Lincoln and LPCM maintained registered agents for service of process in North Carolina during the 2018 fiscal year. See Ex. 1 [D.E. 63-1]; Ex. 2 [D.E. 63-2]. This action alone does not create personal jurisdiction. See, e.g., Ratliff v. Cooper Labs., Inc., 444 F.2d 745, 748 (4th Cir. 1971); Liverett v. Dyncorp Int'l, LLC, No. 3:17-cv-282-JAG, 2017 WL 9481048, at *2 (E.D. Va. July 18, 2017) (unpublished). Nonetheless, plaintiffs also cite a website operated by "Lincoln Property Company" that suggests that "Lincoln Property Company" manages fifteen apartment complexes in North Carolina, including the three apartment complexes in this action. See [D.E. 63] 3, 8. The contacts of a subsidiary corporation generally are not imputed

6

to a parent corporation. See Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005); Mylan Labs, Inc., 2 F.3d at 60–61; Higgs v. Brian Ctr. Health & Retirement/Windsor, Inc., 367 F. Supp. 3d 439, 449 (E.D.N.C. 2019). At this stage, however, the court must draw the most favorable inferences for the existence of personal jurisdiction. See Mylan Labs., Inc., 2 F.3d at 60. Thus, the court infers that "Lincoln Property Company" is Lincoln. Moreover, plaintiffs need only make a prima facie showing that personal jurisdiction exists. See Sneha Media, 911 F.3d at 196–97. Accordingly, the court concludes that plaintiffs have made a prima facie showing that specific personal jurisdiction exists over Lincoln and LPCM and denies the motion to dismiss for lack of personal jurisdiction.

III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

Rather, a plaintiff's allegations must "nudge[] [the] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Defendants' motions require the court to consider the plaintiffs' state law claims, and North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

Plaintiffs allege that defendants violated the RRAA by charging plaintiffs court costs and other out-of-pocket expenses as "eviction fees" when plaintiffs did not pay rent on time. See 2d Am. Compl. [D.E. 42] ¶¶ 230–38; cf. N.C. Gen. Stat. § 42-46(h)(3). On June 14, 2018, the North Carolina General Assembly ("General Assembly") amended section 42-46(h)(3) of the RRAA. See An Act to Allow Landlords to Recover Out-of-Pocket Expenses in Summary Ejectment Cases, 2018 N.C. Sess. Laws 2018-50 (2018). On June 25, 2018, the amendment became effective. See id. The parties dispute whether the RRAA, before and after the 2018 amendment, forbade landlords from charging tenants court costs and other actual out-of-pocket expenses arising from tenants' defaults. Compare [D.E. 51] 7–20 with [D.E. 64] 4–17.

"In construing a state law, [federal courts] look to the rules of construction applied by the enacting state's highest court." Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007); see In re DNA Ex Post Facto Issues, 561 F.3d 294, 300 (4th Cir. 2009). Accordingly, this court looks to the rules of statutory interpretation that the Supreme Court of North Carolina applies.

Under North Carolina law, "[t]he cardinal principle of statutory construction is to discern the

9

intent of the legislature." State v. Jones, 359 N.C. 832, 835, 616 S.E.2d 496, 498 (2005); see Friends of Joe Sam Queen v. Ralph Hise for N.C. Senate, 223 N.C. App. 395, 402, 735 S.E.2d 229, 234 (2012). Courts initially consider a statute's text to discern legislative intent. See Shaw v. U.S. Airways, Inc., 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008); State v. Anthony, 351 N.C. 611, 614, 528 S.E.2d 321, 322 (2000). North Carolina courts "first look to the plain meaning of the statute." Frye Reg'l Med. Ctr., Inc. v. Hunt, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999). "Where the language of a statute is clear, the courts must give the statute its plain meaning . . . ." Id.

"In construing a statute with reference to an amendment it is presumed that the legislature intended either . . . to change the substance of the original act, or . . . to clarify [its meaning]." Childers v. Parker's, Inc., 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968); see Spruill v. Lake Phelps Volunteer Fire Dep't, Inc., 351 N.C. 318, 323, 523 S.E.2d 672, 676 (2000). A clarifying amendment does not alter the original meaning of the statute and, thus, applies retroactively. See Ray v. N.C. Dep't of Transp., 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012); Wilson v. N.C. Dep't of Commerce, 239 N.C. App. 456, 461, 768 S.E.2d 360, 364 (2015); Thornton v. City of Raleigh, 230 N.C. App. 600, 753 S.E.2d 400, 2013 WL 6096919, at *2 (2013) (unpublished table decision). By contrast, an altering amendment modifies a statute's substantive meaning and only applies prospectively. Cf. Ray, 366 N.C. at 9, 727 S.E.2d at 681.

Whether an amendment is altering or clarifying is a question of law for the court. See id. at 8–9, 727 S.E.2d at 681; In re Ernst & Young, LLP, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). The Supreme Court of North Carolina presumes that the legislature intended to change the law when it amends a statute. See State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C., Inc., 307 N.C. 474, 480, 299 S.E.2d 425, 429 (1983); Childers, 274 N.C. at 260, 162 S.E.2d at 483–84; State v. Moore, 240 N.C. App. 465, 477, 770 S.E.2d 131, 140 (2015). Nevertheless, if the amendment serves to

10

address an ambiguity or improve the language of a statute, a court may interpret the amendment as merely clarifying existing law. See Ridge Cmty. Invs., Inc. v. Berry, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977); Childers, 274 N.C. at 260, 162 S.E.2d at 483–84.

A court must undertake a "careful comparison of the original and amended statutes" to "determine whether [an] amendment clarifies [a] prior law or alters it." Ferrell v. Dep't of Transp., 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993); see Ray, 366 N.C. at 10, 727 S.E.2d at 682. Courts can use amendments to interpret a statute by analyzing "the natural inferences arising out of the legislative history as it continues to evolve." Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990). If a statute does not expressly address a particular point, and a legislature enacts an amendment to address that point, the amendment is more likely to be clarifying than altering. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 334 N.C. at 659, 435 S.E.2d at 315; Jeffries v. Cty. of Harnett, 817 S.E.2d 36, 48 (N.C. Ct. App. 2018); see also Bryant v. United States, 768 F.3d 1378, 1385 (11th Cir. 2014) (applying North Carolina law). On the other hand, "an amendment to an unambiguous statute indicates the intent to change the law." Childers, 274 N.C. at 260, 162 S.E.2d at 484; see Taylor v. Crisp, 286 N.C. 488, 497, 212 S.E.2d 381, 386–87 (1975); Bryant, 768 F.3d at 1385.

Before the General Assembly amended section 42-46 in 2018, the RRAA did not allow a landlord to "put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law." N.C. Gen. Stat. § 42-46(h)(3) (2016). Sections 42-46(e), (f), and (g) authorize a landlord to charge a tenant a complaint-filing fee, a court-appearance fee, or a second trial fee depending on how far legal action against the tenant progresses. See id. § 42-46(e)–(g). The 2018 amendment to section 42-46(h)(3) explicitly authorizes landlords

11

to charge defaulting tenants "out-of-pocket expenses." See id. § 42-46(h)(3), (i) (2018). Specifically, the RRAA, as amended, permits landlords to charge defaulting tenants "[f]iling fees charged by the court," "[c]osts for service of process pursuant to" North Carolina law, and "[r]easonable attorneys' fees actually incurred." Id. § 42-46(i)(1)–(3).

Before the amendment, section 42-46(h)(3)'s text did not provide express guidance on whether a "fee" included actual court costs and other damages arising from breach of a lease. The amendment to section 42-46 unequivocally authorizes landlords to charge defaulting tenants for such costs. Because the amendment provided express guidance concerning an issue on which the statute was silent, this court predicts that the Supreme Court of North Carolina would interpret the amendment as clarifying. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 334 N.C. at 659, 435 S.E.2d at 315; Suarez v. Camden Prop. Tr., No. 5:17-CV-124-D, 2019 WL 1301951, at *4 (E.D.N.C. Mar. 21, 2019), appeal docketed, No. 19-1367 (4th Cir. 2019). Moreover, section 42-46(i) distinguishes the "out-of-pocket expenses" authorized by section 42-46(i) from the "late fees" governed by sections 42-46(a) and 42-46(b) and the "administrative fees" governed by sections 42-46(e)–(g). See N.C. Gen. Stat. § 42-46(i). This distinction suggests that a "fee," before the amendment, did not include actual out-of-pocket expenses. Thus, a comparison of the statute's text before and after amendment indicates that the amendment was clarifying.

Notably, the General Assembly enacted the amendment in response to a Wake County Superior Court decision that read section 42-46(h)(3) broadly. See 2d Am. Compl. [D.E. 42] ¶ 63 n.4; Pl.'s Ex. 27 [D.E. 42-27]. These circumstances bolster the conclusion that the General Assembly's legislative intent was to clarify an ambiguity in section 42-46. See, e.g., Thomas v. Barnhill, 102 N.C. App. 551, 553–54, 403 S.E.2d 102, 103–04 (1991); cf. State ex rel. N.C. Milk Comm'n v. Nat'l Food Stores, Inc., 270 N.C. 323, 331, 154 S.E.2d 548, 555 (1967) (stating that "the

12

circumstances surrounding [the] adoption" of a statute can demonstrate legislative intent). Moreover, the 2018 amendment's original (albeit removed) preamble stated that the General Assembly intended to "reaffirm" that landlords could charge defaulting tenants out-of-pocket expenses. S.B. 224 (2d ed.), 2017 Gen. Assemb., Reg. Sess. (N.C. 2017). Finally, the 2018 amendment's original version expressly did not have retroactive effect, but the General Assembly changed that provision in the amendment's final version. See id. Thus, the 2018 amendment's text and legislative history show that the General Assembly's legislative intent was to clarify the RRAA's application to court costs and out-of-pocket expenses.[3]

Because the amendment is clarifying, it applies to this action. See Ray, 366 N.C. at 9, 727 S.E.2d at 681; Wells v. Consol. Judicial Ret. Sys. of N.C., 354 N.C. 313, 318, 553 S.E.2d 877, 880 (2001); Ferrell, 334 N.C. at 661–62, 435 S.E.2d at 317; Childers, 274 N.C. at 260, 162 S.E.2d at 483–84. Accordingly, section 42-46(h)(3) at all times permitted defendants to charge plaintiffs for out-of-pocket expenses (i.e., what plaintiffs allege are "eviction fees"). Moreover, defendants could charge reasonable attorneys' fees. See Suarez, 2019 WL 1301951, at *4–5. Because North Carolina law does not forbid landlords to charge defaulting tenants out-of-pocket expenses and attorneys' fees, the court grants Inman Park and Vert's motions to dismiss plaintiffs' RRAA claim.

As for plaintiffs' NCDCA and UDTPA claims, see 2d Am. Compl. [D.E. 42] ¶¶ 239–73, to state a claim under either statute, plaintiffs must plausibly allege that Inman Park and Vert

---

[3] Plaintiffs argue that the General Assembly's rejection of language in the original draft stating that the legislature aimed to "reaffirm" landlords' ability to charge out-of-pocket expenses supports their interpretation. See [D.E. 77] 16–17. Legislative history is "often murky, ambiguous, and contradictory." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005). Thus, even assuming that one can infer from the General Assembly's rejection of the original preamble that it intended to alter the law, this negative inference alone does not outweigh the other evidence that the General Assembly intended only to clarify the RRAA.

committed an unfair or deceptive act. See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000); Reid v. Ayers, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000); Suarez, 2019 WL 1301951, at *5–6. Because the RRAA does not and did not forbid their actions, plaintiffs do not plausibly allege an unfair or deceptive act. See, e.g., Suarez, 2019 WL 1301951, at *5–6; Milroy v. Bell Partners, Inc., No. 5:18-CV-516-D, 2019 WL 3451506, at *5–6 (E.D.N.C. July 30, 2019) (unpublished). Accordingly, the court grants Inman Park and Vert's motions to dismiss for failure to state a claim, and dismisses all claims against Inman Park and Vert.

## B.

As for Lincoln and LPCM's motion to dismiss for failure to state a claim, Lincoln and LPCM argue that they are not landlords under the RRAA. See [D.E. 55] 8. Plaintiffs allege that Lincoln and LPCM contracted to function as property managers for Greystone, Inman, and Vert and are landlords. See 2d Am. Compl. [D.E. 42] ¶¶ 17, 20.

A "landlord" is "any owner and any rental management company, rental agency, or any other person having the actual or apparent authority of an agent to perform the duties imposed by" the RRAA. N.C. Gen. Stat. § 42-40(3). An entity that manages a rental property is a landlord. See, e.g., Taylor v. Batts, 201 N.C. App. 728, 689 S.E.2d 601, 2010 WL 10395, at *2 (2010) (unpublished table decision); cf. Baker v. Rushing, 104 N.C. App. 240, 248, 409 S.E.2d 108, 113 (1991) (stating that the RRAA's statutory definition of a landlord is "broad"). Plaintiffs plausibly allege that Lincoln and LPCM are landlords. Thus, the court denies Lincoln and LPCM's motion to dismiss plaintiffs' RRAA, NCDCA, and UDTPA claims for failure to state a claim on that basis. Nonetheless, plaintiffs' RRAA, NCDCA, and UDTPA claims fail for the same reasons discussed concerning Inman Part and Vert.

14

## IV.

Graystone moves for judgment on the pleadings. Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). The same standard controls a motion for judgment on the pleadings as a motion to dismiss under Rule 12(b)(6). See Burbach Broad. Co., 278 F.3d at 405–06.

Greystone's motion for judgment on the pleadings turns on the same legal issues as Inman Park and Vert's motions to dismiss for failure to state a claim. Thus, plaintiffs' claims fail for the same reasons. Accordingly, the court grants Greystone's motion for judgment on the pleadings and denies as moot Greystone's motion to sever.

## V.

In sum, the court GRANTS Inman Park and Vert's motions to dismiss for failure to state a claim [D.E. 47, 52] and Greystone's motion for judgment on the pleadings [D.E. 65], and DISMISSES plaintiffs' claims against Inman Park, Vert, and Greystone. The court DENIES Lincoln and LPCM's motions to dismiss for lack of personal jurisdiction, but GRANTS their motion to dismiss for failure to state a claim [D.E. 54]. The court DENIES AS MOOT the remaining motion [D.E. 49].

15

SO ORDERED. This 14 day of November 2019.

JAMES C. DEVER III
United States District Judge